## COCKE et ux. v. WRIGHT.

### No. 1267—5671.

Commission of Appeals of Texas, Section B.
June 10, 1931.

Tom L. McCullough, A. A. Cocke, and Phillips & Phillips, all of Dallas, for plaintiffs in error.

John W. Pope, of Dallas, for defendant in error.

SHORT, P. J.

On June 12, 1928, G. G. Wright, receiver of the United Home Builders of America, had rendered in his favor a judgment against the plaintiffs in error for $2,813.69, with interest thereon from that date at the rate of 3 per cent. per annum, and all costs of court, with a foreclosure of a lien on a certain lot in a certain addition to the city of Dallas, and an order of sale to sell it, in satisfaction of the judgment, after a certain date, in case the judgment was not paid. After this date, and the failure to pay the judgment, the receiver had issued an order of sale and placed it in the hands of the sheriff of Dallas county, who proceeded to execute it by advertising the property for sale on the first Tuesday in January, 1929. On the 31st day of December, 1928, the plaintiffs in error procured a temporary writ of injunction enjoining the sale on the ground that the plaintiff in error, A. A. Cocke, had an unsatisfied judgment in his favor against the United Home Builders of America in a sum greater than the amount of the judgment against him, and was entitled to have the judgment in favor of the receiver satisfied by crediting the amount due the receiver on the judgment he held. After the parties had filed all necessary pleadings a trial was had before the court, upon the issues made, and a judgment was rendered dissolving the injunction, by the same district court in which the receivership proceedings were pending. The plaintiffs in error then carried the case to the Court of Civil Appeals at Dallas, where the judgment of the district court was affirmed. 23 S.W.(2d) 449.

The plaintiffs in error were granted a writ of error by the Supreme Court and the case having been referred to this section of the commission, it has been submitted upon the briefs of the parties and also upon oral argument. The United Home Builders of America was a co-operative association, created under a declaration of trust dated January 2, 1919, and operated thereunder until the month of May, 1920, at which time it went under the supervision of what was then the Banking and Insurance Department of Texas, and continued to operate under said department until the appointment of the receiver, who qualified on the 26th day of January, 1923. The declaration of trust under which the United Home Builders of America was created had the effect to create a co-partnership between the parties to said agreement, and all persons became members thereof who purchased contracts through which the association transacted its business. Barlow v. Wright (Tex. Civ. App.) 279 S. W. 593; Thompson v. Schmitt, 115 Tex. 53, 274 S. W. 554, A. A. Cocke and W. M. Webb were named as trustees in the declaration of trust. The company issued and sold what it denominated as a 3 per cent. loan home purchasing contract to its members, which were numbered beginning with No. 1 in numerical order. It sold approximately 25,606 of these contracts, but it appears that approximately three-fourths of these contracts became nullified by a failure of the purchasers to comply with the conditions imposed upon them in the declaration of trust. The members would pay $10 per month upon them, and when as much as $150 was paid, exclusive of the first three payments, then if sufficient money had been created in the loan and trust fund to reach the sum of $1,000 and that member's number had been reached, in its numerical order, he would be entitled to a loan from the company upon real estate security, in the sum of $1,000 to be repaid at $10 per month with accrued interest at 3 per cent. per annum on unpaid policies, payable monthly.

While A. A. Cocke, plaintiff in error, was still acting as cotrustee and also as its general counsel, he borrowed money from the company upon a mechanic's lien or his homestead, basing the loan on matured contracts in the company, which he held. This is the transaction upon which judgment was rendered in the district court and the enforcement of which was temporarily enjoined. While A. A. Cocke was still acting as cotrustee of the company he became the owner of 43 of such contracts and others not involved in this suit, and obtained another loan from the company known and classed by it as a temporary loan in the sum of $16,982.50, representing borrowed money from the company and among others he delivered to the company 43 home builders' contracts involved here as a pledge to secure the payment of said note. This note was afterwards reduced by payment to $5,686.07, besides interest. In the receivership proceedings these 43 contracts were valued at $9,539.55, the same being evidenced by a judgment rendered in the receivership proceedings, and it is the contention of the plaintiffs in error that they have the right to have the judgment, the collection of which was temporarily enjoined, canceled by crediting the amount of it on the judgment, in favor of A. A. Cocke, for $9,535.55, on the ground that this later judgment was of equal dignity with that of the former, and that the Court of Civil Appeals erred in holding that the judgment for the debt in the amount of $9,539.55, against the association, was not entitled to be set off against the receiver's judgment for $2,813.69.

It is the contention of the defendant in error that to allow this claim would be inequitable for the reason that it appears that the assets of the partnership would be sufficient to pay only forty cents on the dollar to the remaining partners, while A. A. Cocke, to the extent of the judgment enjoined, would receive one hundred cents on the dollar.

It appears from the record that when the receiver took charge of the affairs of the partnership there were about six hundred members who had borrowed money from it, as had the plaintiff in error, Cocke, and that there were about seven thousand members who had not borrowed any money from it, but who were holders in good standing of its three per cent. loan home purchasing contracts. The partnership being insolvent, and no longer in existence, except for the purpose of winding up its affairs, it was the duty of the receiver, under the orders of the court, to collect from those who owed it, the full amounts of their respective debts, and after paying the expenses of the receivership proceedings to distribute the remainder among the partners. Assuming there were six hundred borrowers, then there were six hundred debts due the partnership, and these six hundred debts were the property of all the partners to the extent of their respective interests as shown by the contracts they owned. These debts, if collectible, could only be fully paid by a delivery of one hundred cents on the dollar to the receiver. It must be assumed that these seventy-six hundred owners of these contracts, including the seven thousand members who had not borrowed any money from the partnership, and the six hundred who had, were all entitled to the same treatment by each receiving, according to the value of his adjudicated claim against the partnership, his pro rata share of the net assets of the partnership. This division of the assets, in this manner, would enable each member of the partnership to receive his full proportion of the net assets.

In the case of Prudential Building & Loan Association v. Shaw (Tex. Com. App.) 26 S.W. (2d) 168, where a somewhat similar situation was being discussed, it was held that where a building and loan association was insolvent in the sense that it cannot pay its shareholders in full, on petition of the association to reduce liability to members, under the Building & Loan Act, § 57 (Acts of the 41st Legislature, Second Called Session, c. 61 [Vernon's Ann. Civ. St. art. 881a—56]), both stock of borrowing and nonborrowing members should be written down alike, unless there is some contract between the shareholder and the association precluding such action, since, generally, borrowing shareholders occupy a dual relationship to the association. In that case the partnership was still a going concern. In this case the partnership has ceased to operate, and the sole purpose of the receivership proceedings is to wind up its affairs, under the direction of the court, and necessarily the actual value of its assets, to be distributed among the shareholders, or, in this case the contract holders, cannot be ascertained until all the debts due the partnership have been collected which can be. When this has been done, and not until then, can there be a distribution of the assets among the contract holders, whether they be borrowing or nonborrowing members.

The equitable principle involved in this case is discussed in the case of People's Building & Loan Association v. McPhilamy, 81 Miss. 61, 32 So. 1001, 1006, 59 L. R. A. 743, 95 Am. St. Rep. 454, by the Supreme Court of Mississippi, wherein is quoted, with approval, the following from Strohen v. Franklin Saving Fund & Loan Association, 115 Pa. 273, 8 A. 843:

"The insolvency of the company [as before observed] puts an end to its operation as a building association. To a certain extent, it also ends the contract between it and its members, and nothing remains but to wind it up in such manner as to do equity to creditors and between the members themselves. As regards the latter, care should be taken to adjust the burden equally, and not throw on either the borrowers or nonborrowers more than their respective share. That result may be reached by requiring the borrower to repay what he actually received, with interest. He would then be entitled, after the debts are paid, to a pro rata dividend with the nonborrower for what he had paid upon his stock [or contracts]. He will thus be obliged to bear his proper share of losses. To allow him to credit upon his mortgage his payments on his stock would enable him to escape responsibility for his share of the losses, and throw them wholly upon the nonborrowers. In other words, the borrower would escape without loss. It will not do to administer the affairs of an insolvent corporation in this manner."

According to the plan set out in the declaration of trust, no one could borrow any money from the partnership unless he became a partner, but this fact does not change the rules of equity, which would be applicable to a partnership in the hands of a receiver for the liquidation of its affairs where the partners owed nothing, and where all the claims, in its favor, were due to be paid by strangers to the partnership. The receiver in this proceeding represents the interests of all the partners, including the borrowing and the nonborrowing members. To the extent that A. A. Cocke was a member of the partnership, the receiver represents him, while A. A. Cocke, one of the plaintiffs in error, represents himself, not as a member of the partnership, but as one of its debtors. When the receiver was appointed and had qualified, this had the effect to put the property of the partnership in custodia legis. Texas Trunk Ry. Co. v. Lewis, 81 Tex. 8, 16 S. W. 647, 26 Am. St. Rep. 776. The receiver is a mere agent of the court wherein the receivership proceedings are pending, and these proceedings have the legal effect to segregate the property of the partnership from the rights of

those who have claims against its property. So in the case at bar the judgment sought to be enjoined is under the control of the court, acting through its receiver, and is not the proper subject of injunction, at the instance of Cocke, as an individual, who is asserting ownership of a claim against the partnership, as such individual claimant. The court had rendered a judgment in favor of the receiver against Cocke and wife, from which no appeal was taken. This judgment concludes the rights of Cocke and wife in the premises, and establishes the lien on their property to secure its satisfaction. Even though Cocke and wife had the right to plead an offset in the case, wherein judgment was rendered which is sought to be enjoined, Cocke's claim against the partnership, as now set up, should have interposed upon the trial of the case. The judgment is conclusive of all matters between the parties with the record in this condition. As such debtor Cocke is obligated to repay to the partnership all of the moneys he borrowed from it, and the receiver is under the duty to collect all of these moneys in so far as he can. In the effort to collect the moneys the receiver is entitled to appropriate whatever security, for the money loaned, the partnership had when he took possession of its affairs. In this instance, the security is in the form of a town lot, which the court has held to be subject to the payment of this debt, as evidenced by a judgment from which no appeal was ever taken. This judgment speaks for itself, and is in all respects enforcible, according to its terms. When the debts due the partnership have been collected, and the expenses of the receivership have been paid, A. A. Cocke, as a member of the partnership, will be entitled to receive his pro rata share in the distribution of its assets.

There is another question presented by the assignments of error, and which has been discussed by the Court of Civil Appeals in its opinion, but the conclusion we have reached, as to the question discussed, renders unnecessary a discussion of that question, especially since we think the Court of Civil Appeals has correctly disposed of it. As the receiver has the right to collect the judgment sought to be enjoined, as we have held he has, and if the receiver represents all of the contract holders, whether borrowing or nonborrowing members, as we have held he does, the proceeds of this judgment, in his hands, would, of course, be in the custody of the court, in which the receivership proceedings are pending, and like all other assets belonging to the partnership, when collected by the receiver, would be subject to disposal by the court, when the time shall arrive for a final disposition of the case. As we view the record, the only question presented is whether the receiver has the right to subject the security mentioned in the judgment to its satisfaction.

Believing that he has, we recommend that the judgments of the Court of Civil Appeals and of the district court be affirmed.

CURETON, C. J.

Judgments of the district court and Court of Civil Appeals are both affirmed, as recommended by the Commission of Appeals.