455 F.2d 382
 9 UCC Rep.Serv. 1332
 Burton R. SIGNER, Trustee for Jerry Salomine,
Plaintiff-Appellant and Cross-Appellee,
v.
The FIRST NATIONAL BANK & TRUST COMPANY OF COVINGTON,
KENTUCKY, Defendant-Appellee and Cross-Appellant.
 Nos. 71-1337, 71-1338.
 United States Court of Appeals,
Sixth Circuit.
 Dec. 17, 1971.
Rehearing Denied Feb. 28, 1972.
 
 Charles J. Schear, Newport, Ky., for Burton R. Signer.
 James C. Ware, Covington, Ky., for First National Bank.
 Before PHILLIPS, Chief Judge, and McCREE and BROOKS, Circuit Judges.
 BROOKS, Circuit Judge.
 
 
 1
 This is a diversity action for damages claimed to have resulted from the wrongful disposition of collateral pledged by plaintiff-appellant Burton R. Signer, Trustee for Jerry Salomine, to defendant-appellee First National Bank and Trust Company of Covington, Kentucky. The factual circumstances giving rise to this appeal are complex and require recitation in some detail.
 
 
 2
 On July 8, 1966, Salomine sold a boat harbor and business known as the Tri-City Yacht Club to a Richard E. Arnold. To pay the purchase price, Arnold borrowed $52,000 from the Bank (this was an installment loan of $40,000 cash which was advanced to the borrower with $12,000 interest being added to the principal), and gave his promissory note secured by a chattel mortgage (Arnold Note and Mortgage) on the boat harbor and its assets. To effect the loan, the Bank required Salomine to co-sign the note and to pledge $15,000 cash as security which was placed in a savings account with the Bank.
 
 
 3
 Subsequently, Salomine learned that Arnold was some $4,000 in default of his payments on the Arnold Note and Mortgage, and to avoid possibly jeopardizing his credit by being a co-signer of a note in default, he entered into a trust agreement with his attorney, Burton R. Signer, whereby Signer as his trustee would purchase the Arnold Note and Mortgage from the Bank and "assume the Bank's position" with regard to it. On December 1, 1967, the face amount of the balance due on the Arnold Note and Mortgage was $46,488 which consisted of a principal balance due of $39,682 and $6,806 unearned interest. The Bank agreed to sell the Arnold Note and Mortgage to Signer for the face amount due less the unearned interest which made the discounted purchase price $39,682. To raise the purchase money, Salomine assigned to Signer his $15,000 pledged savings account which was then deposited to Signer's trustee account and Signer gave the Bank his promissory note for $24,682 (Signer Note) the proceeds of which were also credited to Signer's account. A check for $39,682 was then issued to the Bank by Signer for the $39,682 purchase price. An endorsement on the rear of the check stated: "Payment in full for purchase of Note and Chattel Mortgage of Richard Arnold, DBA Tri-City Yacht Club."
 
 
 4
 At the time of the transaction, the Bank endorsed the Arnold Note[1] and chattel mortgage[2] to Signer, and Signer then pledged the Arnold Note and Mortgage as security on the Signer Note and endorsed them[3] to the Bank. Signer also gave the Bank a second check which prepaid six months interest on the Signer Note, and the parties agreed that the Bank should continue as agent to collect payments on the Arnold Note and Mortgage and credit them to the Signer Note. On December 27, 1967, Signer formally notified Arnold that he was in default of payment on the Arnold Note and Mortgage and pursuant to the acceleration clause in the mortgage demanded payment in full. On March 7, 1968 suit was filed against Arnold in the Campbell Circuit Court seeking immediate possession of the mortgaged property, damages for its detention and the appointment of a receiver.
 
 
 5
 While Arnold did not comply with the demand for accelerated payment of the Arnold Note and Mortgage, he did continue to make or cause to be made $12,200 in installment payments to the Bank which were credited to the Signer Note. On August 2, 1968, the balance on the Signer Note had been reduced by these payments to $12,482, and on that date occurred the events resulting in this law suit.
 
 
 6
 Arnold, without notice to Signer, paid or caused to be paid the balance due on the Signer Note, and the Bank, also without notice to Signer, cancelled the Signer Note as being paid in full, marked the Arnold Note and Mortgage, that was security on the Signer Note, paid in full, and delivered the Arnold Note and Mortgage to Arnold. The Bank also executed and delivered to Arnold a formal release of the mortgage which he filed in the office of the Campbell County Clerk and which resulted in the dismissal of the pending circuit court suit that Signer had filed against him. The release of the mortgage also caused Signer the loss of the collateral security as Arnold promptly mortgaged the property to another bank in return for a loan.
 
 
 7
 This suit was then filed by Signer seeking compensatory and punitive damages. Following trial without a jury, the District Judge found the Bank was "in error" when it released the Arnold Note and Mortgage to Arnold, and judgment was entered against the Bank for $6,806 which was the difference between $46,488, the gross balance due on the Arnold Note and Mortgage at the time of purchase, and $39,682, the discounted purchase price. No recovery was allowed for $15,000 of the amount paid by Signer in purchasing the Arnold Note and Mortgage, nor for losses sustained in the dismissal of the case in the Campbell Circuit Court. Punitive damages were also denied. This appeal and cross-appeal followed.
 
 
 8
 We affirm the award of $6,806 as made by the District Court and agree that punitive damages were properly denied. We hold, however, that Signer was entitled to recover from the Bank the $15,000 additionally paid by him in purchasing the Arnold Note and Mortgage and also such damages as may have been sustained by reason of the dismissal of the case in the Campbell Circuit Court.
 
 
 9
 The District Court correctly found under the facts as we have set them forth that Signer became the owner of the $46,488 Arnold Note and Mortgage when he gave the Bank his check for $39,682 and the Bank endorsed both the note and mortgage to him. When Signer then pledged the Arnold Note and Mortgage as security on his $24,682 Signer Note, the Bank's primary obligation, upon payment of the Signer Note, was to return the pledged security to Signer, the pledgor. The rule is that upon satisfaction or payment of the original debt that the security pledged be returned to the pledgor, Callebs v. Smith, 268 Ky. 162, 166, 103 S.W.2d 949 (1937), and failure to do so amounts to a wrongful conversion of the security for which the pledgee is liable. Restatement, Security Section 22; 41 Am.Jur. Pledge and Collateral Security Section 58; 72 C.J.S. Pledges Sec. 36, page 59, Sec. 48, page 88. The duty of a pledgee when collateral is in his possession is also set forth in the Uniform Commercial Code which has been adopted in Kentucky. The pertinent provision, KRS 355.9-207, reads:
 
 
 10
 "(1) A secured party must use reasonable care in the custody and preservation of collateral in his possession. In the case of an instrument or chattel paper reasonable care includes taking necessary steps to preserve rights against prior parties unless otherwise agreed."
 
 
 11
 ******
 
 
 12
 * * *
 
 
 13
 "(3) A secured party is liable for any loss caused by his failure to meet any obligation imposed by the preceding subsections but does not lose his security interest."
 
 
 14
 Implicit in the findings of the District Court is that the Bank failed to exercise reasonable care when it deliberately delivered the Arnold Note and Mortgage to Arnold rather than to Signer, its owner.
 
 
 15
 As has been noted, in considering the damage sustained because of the Bank's wrongful surrender of the Arnold Note and Mortgage, the District Court recognized that Signer as owner of the note was entitled to recover the gross balance due on the note rather than the discounted purchase price. Thus, judgment was entered against the Bank for $6,806 representing the difference. However, Signer sustained an additional and greater loss because of the Bank's negligent surrender of the Arnold Note and Mortgage. Again, as has been noted, Signer purchased the Arnold Note and Mortgage with his check for $39,682 but the face amount of the Signer Note which Arnold paid was only $24,682 or $15,000 less than the amount paid by Signer for the Arnold Note and Mortgage, and so Arnold, after paying the Signer Note, remained indebted to Signer for $15,000 in addition to the $6,806 unearned interest item awarded by the District Court. And the Bank, by wrongfully delivering the Arnold Note and Mortgage to Arnold, and precisely as it had done in the matter of the unearned interest item, deprived Signer of both the evidence of Arnold's indebtedness to him, the note, and the security for that indebtedness, the chattel mortgage on property valued at $70,000. Signer is entitled to judgment for $15,000 in addition to his award of $6,806, or a total judgment of $21,806, in satisfaction of Arnold's indebtedness to him.
 
 
 16
 The recoupment by Signer of Arnold's indebtedness to him as owner of the Arnold Note and Mortgage may then be summarized as follows:
 
 
 17
 Gross balance when purchased ......................................... $46,488.
Installment payments by Arnold credited to Signer Note ..... $12,200.
Balance of Signer Note paid by Arnold ....................... 12,482.
Award of District Court against Bank for difference between
 gross balance and purchase price ........................... 6,806.
Additional award against Bank as adjudged ................... 15,000.
 --------
 Total Recoupment ................................................... $46,488.
 
 
 18
 Interest should be computed on the $21,806 award not from date of judgment but from date of the wrongful conversion by the Bank of the Arnold Note and Mortgage. General Accident Fire and Life Assurance Corporation v. Judd, Ky., 400 S.W.2d 685 (1966); Curtis v. Campbell, Ky., 336 S.W.2d 355, 361 (1960); Dalton v. Mullins, Ky., 293 S.W.2d 470 (1956); 36 A.L.R.2d 391-397.
 
 
 19
 Signer is also entitled to recover such actual damages as he sustained as a result of the dismissal of the claim and delivery action filed in the Campbell Circuit Court. The District Court denied the claim on the grounds that Signer was not entitled to damages for wrongful detention of the property pledged as security on the Arnold Note. The suit, however, also sought immediate possession of the property and such action is clearly authorized. KRS 355.9-503 provides in relevant part:
 
 
 20
 "Unless otherwise agreed a secured party has on default the right to take possession of the collateral. In taking possession a secured party may proceed without judicial process if this can be done without breach of the peace or may proceed by action."
 
 
 21
 The claim and delivery procedure is embodied in KRS 425.120-425.180. See Fort Knox National Bank v. Gustafson, Ky., 385 S.W.2d 196 (1964). On remand the actual damages sustained by reason of the dismissal of the suit will be determined and included in the judgment against the Bank.
 
 
 22
 The denial of punitive damages by the District Court was proper. Such damages are given only on account of the wanton, reckless, malicious or offensive character of the acts complained of. Harrod v. Fraley, Ky., 289 S.W.2d 203 (1956); Ashland Dry Goods Company v. Wages, 302 Ky. 577, 195 S.W.2d 312 (1946). No such conduct was reflected in the record of this case and punitive damages do not flow from acts committed in good faith. Fort Knox National Bank v. Gustafson, supra.
 
 
 23
 Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.
 
 ON PETITION FOR REHEARING
 
 24
 Before PHILLIPS, Chief Judge, and PECK and McCREE, Circuit Judges.*
 
 
 25
 PER CURIAM.
 
 
 26
 The bank has filed a petition for rehearing in this case.
 
 
 27
 It is contended that there is an error in calculation in the amount of the judgment of the District Court. The bank asserts that the court gives no credit for a rebate of unearned interest; that the note was originally made for 72 months but was in existence only about one-third of its original term; that the note was paid prior to maturity; and that a rebate of unearned interest should be allowed under standard banking practices.
 
 
 28
 The opinion of this court affirmed the judgment of the District Court in part, reversed in part and remanded the case for further proceedings. We construe the opinion to authorize the District Court, on remand, to make any correction in the computation of the amount of the judgment found to be justified.
 
 
 29
 The petition for rehearing is denied.
 
 
 
 [1]
 Note endorsement: "For value received pay to the order of Burton R. Signer, Trustee without recourse. The First National Bank & Trust Co. by W. B. Grieme V.P."
 
 
 [2]
 Chattel mortgage endorsement: "For value received we do hereby assign all of your rights, Title and Interest in and to this instrument to Burton R. Signer, Trustee. The First National Bank & Trust Co., W. B. Grieme"
 
 
 [3]
 Arnold Note and Mortgage endorsements: "For value received, pay to the order of The First National Bank & Trust Co. with recourse as security for commercial note by Burton R. Signer, Trustee"
 
 
 *
 Judge Henry L. Brooks, author of the original opinion, died December 30, 1971